# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

UNITED STATES OF AMERICA    :
                    :

v.                  :     DOCKET NO. 4:2017-CR- *20* (CDL)
                    :

GARY BRUCE HAMBY      :
                    :

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorneys, and GARY BRUCE HAMBY, hereinafter referred to as the "Defendant," and the Defendant's undersigned attorney, as follows:

### (1)

The Defendant acknowledges that the Defendant has reviewed and discussed the Criminal Information against the Defendant in this matter with the Defendant's attorney and the Defendant's attorney has explained to the Defendant his understanding of the Government's evidence.

### (2)

The Defendant understands that the Defendant is not required to plead guilty, and that the Defendant has the right to plead not guilty and to elect instead to be tried by jury. The Defendant understands that at a jury trial, the Defendant would enjoy a presumption



of innocence, and that the Government would have the burden of proving the Defendant's guilt beyond a reasonable doubt. The Defendant understands that the Defendant would be entitled to the services of a lawyer at all stages of such a trial. The Defendant understands that the Defendant would be entitled to confront and to cross-examine the Government's proof, and to present witnesses and evidence on the Defendant's own behalf. The Defendant understands that the Defendant would have the right to testify in the Defendant's own behalf, but that the Defendant could not be compelled to do so. The Defendant has discussed these rights with the Defendant's attorney. The Defendant is satisfied with the services of the Defendant's lawyer. The Defendant knowingly and voluntarily waives the Defendant's right to plead not guilty and to proceed to trial.

The United States and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005). The Defendant knowingly and voluntarily waives any further objections that the Defendant may have based on <u>Booker</u>, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and their progeny. The Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or



proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

The Defendant being fully cognizant of the Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)    The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to a single-count Criminal Information charging the Defendant with Conspiracy to Violate the Anti-Kickback Act, in violation of Title 18, United States Code, Section 371.

(B)    The Defendant fully understands that the Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject the Defendant to a maximum sentence of up to five years imprisonment, a maximum fine of $250,000, or both, a term of supervised release of three years, and a mandatory assessment of $100.00.

(C)    The United States and the Defendant will recommend to the Court that:

(i)     The Defendant's base offense level be determined using U.S.S.G. § 2B4.1 and that the Defendant's base offense level is 8;

(ii)    The greater of the value of the bribe or the improper benefit to be conferred is greater than $250,000 and less than $550,000 (including



3

relevant conduct under U.S.S.G. § 1B1.3), thus resulting in a 12-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1); and

(ii)   The United States and the Defendant agree that the Defendant has assisted the United States in the investigation and prosecution of the Defendant's own misconduct by timely notifying authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.   If the Defendant qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a) and the offense level prior to the operation of that section is a level 16 or greater, the United States agrees to move prior to or at the time of sentencing for an additional one-level decrease in the Defendant's offense level, pursuant to § 3E1.1(b).

The Defendant understands that the parties' agreement regarding the application of the sentencing guidelines is not binding upon the Court or the Probation Office.   The Defendant further acknowledges and agrees that the Defendant will not be allowed to withdraw the Defendant's plea because the parties' agreement regarding the application of the sentencing guidelines or the guidelines calculated by the Defendant's counsel or



4

the Probation Office is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.   The United States and the Defendant have not agreed on any further sentencing issues, whether related to the Sentencing Guidelines or otherwise, other than those listed above or elsewhere in this plea agreement.   The United States and the Defendant reserve the right to argue at sentencing with respect to any aggravating or mitigating factor or circumstance not specifically addressed above or elsewhere in this plea agreement.   For example, the United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying the Defendant's involvement, giving conflicting statements as to the Defendant's involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(D)    The Defendant understands fully and has discussed with the Defendant's attorney that the Court will not be able to determine an advisory guideline sentence until after a presentence investigative report has been completed.    The Defendant understands and has discussed with the Defendant's attorney that the Defendant will have the opportunity to review the presentence investigative report and challenge any facts reported therein.    The Defendant understands and has discussed with the Defendant's attorney that any objections or challenges by the Defendant or the

5

Defendant's attorney to the Presentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E)     The Defendant understands and has discussed with the Defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F)     The Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)     The Defendant understands, and has fully discussed with the Defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that the Defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim, the Government, or the community.   In the event any other co-conspirators enter into a resolution with the United States, the United States agrees to recommend at sentencing that the Defendant's restitution shall be joint and several with those individuals.

(H)   The Defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a Defendant's sentence.   Once this agreement is



6

accepted and sentence is imposed by the District Court, the Defendant by this agreement forever waives any right to an appeal or any other court review of the Defendant's sentence, to include any collateral attack on the District Court's sentence, except that the Defendant shall retain the right to bring a claim of ineffectiveness of counsel. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then the Defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.

(I)     The Defendant and the United States agree that nothing in this plea agreement shall affect the Government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States notices an appeal of the Defendant's sentence, then the Defendant shall have the right to cross-appeal from the sentence.

(J)     The Defendant agrees to cooperate fully and truthfully with the United States and to provide all information known to the Defendant regarding any criminal activity as requested by the United States. In that regard:

> (i)     The Defendant agrees to testify truthfully and completely at any grand juries, trials, or other proceedings.



(ii)    The Defendant agrees to be reasonably available for debriefing and pre-trial conferences as the United States may require.

(iii)    The Defendant agrees to provide all documents, records, writings, or materials of any kind in the Defendant's possession or under the Defendant's care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

(iv)    The Defendant agrees that the Statement of Facts, below, is limited to information to support the plea. The Defendant will provide more detailed facts relating to this case during ensuring debriefings.

(v)    The Defendant is hereby on notice that the Defendant may not violate any federal, state, or local criminal law while cooperating with the United States and that the United States will, in its discretion, consider any such violation in evaluating whether to file a motion for a downward departure or reduction of sentence.

(vi)    Nothing in this agreement places any obligation on the United States to seek the Defendant's cooperation or assistance.

(K)    The Defendant understands that this agreement is not conditioned upon: (1) charges being brought against any other individual, (2) any outcome in any pending investigation, (3) any result in any future prosecution which may occur because of the



8

Defendant's cooperation, or (4) any result in any future grand jury presentation or trial involving charges resulting from this investigation. This agreement is only conditioned upon the Defendant providing full, complete, and truthful cooperation.

(L)  The parties agree that the United States reserves the right to seek any departure from the applicable Sentencing Guidelines pursuant to U.S.S.G. § 5K1.1, or any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, if , in its sole discretion, the United States determines that such a departure or reduction of sentence is appropriate.

(M)  The United States and the Defendant hereby agree that any breach of this agreement by the Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the information, would: (a) not relieve the Defendant of the Defendant's plea of guilty; (b) permit the Government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Criminal Information; (c) permit the Government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the Government to utilize against the Defendant in any subsequent judicial proceeding any and all statements made by the



9

Defendant.   If the Court allows the Defendant to withdraw his guilty plea for a "fair and just reason," pursuant to Fed. R. Crim. P. 1 l(d)(2)(B), the Defendant waives his rights under Fed. R. Evid. 410, and the Government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this Plea Agreement, against the Defendant in any proceeding.   If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia.   The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence.   The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

### (4)

In exchange for the consideration set forth in Paragraph (3) above, the United States agrees as follows:

(A)   That the United States will accept the plea of guilty by the Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States at the time of the Defendant's guilty plea, which might have been brought solely in this district against the Defendant.



10

(B)    That the United States further agrees, if the Defendant cooperates truthfully and completely with the Government, as detailed above, at any proceeding resulting from or related to the Defendant's cooperation, to make the extent of the Defendant's cooperation known to the sentencing court.   If the Defendant is not completely truthful and candid in Defendant's cooperation with the United States, the Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge.   If the cooperation is completed prior to sentencing, the United States agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a United States motion at the time of sentencing recommending a downward departure from the advisory guideline range.   If the cooperation is completed subsequent to sentencing, the United States agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence.   In either case, the Defendant understands that the determination as to whether the Defendant has provided "substantial assistance" rests solely with the United States.   Any good faith efforts on the part of the Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a



11

motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should the Defendant fail to cooperate truthfully and completely with the United States, or if the Defendant engages in any additional criminal conduct, the Defendant shall not be entitled to consideration pursuant to this paragraph.

(C)     Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the United States agrees that any self-incriminating information which was previously unknown to the United States and is provided to the United States by the Defendant in connection with the Defendant's cooperation and as a result of the Defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the United States agrees not to bring additional charges against the Defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in 18 U.S.C. § 924(e)(2)(B)(i), based on any information provided by the Defendant in connection with the Defendant's cooperation, which information was not known to the United States prior to said cooperation. This does not restrict the United States' use of information previously known or independently obtained for such purposes.

**(5)**

Nothing herein limits the sentencing discretion of the Court.



(6)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney or Trial Attorney, concerning any plea to be entered in this case.   In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States and the Defendant, by and through the Defendant's counsel, enter into the following Stipulation of Fact.   This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court.   Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

**Subject to the above paragraph, the United States and the Defendant stipulate and agree that at trial the United States could prove the following beyond a reasonable doubt:**



13

(A)     On or about September 4, 2013, Company A was awarded a Multiple Award Task Order Contract for $29,369,459 for work at Fort Benning, a military installation located in the Middle District of Georgia, to renovate a barracks.

(B)     In or around February 2015, Gary Hamby ("Hamby"), owner and managing partner of Southern Atlantic Construction, LLC ("SAC"); S.J., SAC's site supervisor; and D.K., Company A's Director of Operations for the Fort Benning project, met at The Social Restaurant in Columbus, Georgia and discussed a possible kickback scheme.   D.K. told Hamby that he would award SAC work at Fort Benning if Hamby paid kickbacks to D.K.

(C)     Shortly after the in or about February 2015 meeting, S.J. purchased, through his personal account, an approximately $800 box of cigars, which were reimbursed by SAC and provided to D.K.

(D)     On or about April 3, 2015, Hamby sent D.K. an e-mail stating, "Walk the site and have dinner on Tuesday night."   D.K. then instructed Hamby to submit a subcontracting bid to Company A for the work at Fort Benning.   Shortly thereafter, S.J., through his personal account, made a $5,000 cash payment to D.K. at Fort Benning, which was reimbursed by SAC.



(E)     On or about May 27, 2015, Company A awarded SAC a subcontract in the amount of $537,500 for work at Fort Benning.   However, from on or about May 13, 2015 through on or about December 16, 2015, Company A awarded to SAC a total of $1,383,306.18 through purchase orders and various contract modifications off of the original subcontract.

(F)     On or about June 22, 2015, D.K. opened a bank account ending in -6009 in his own name.   Subsequently, D.K. provided Hamby with the wiring instructions for the -6009 account.

(G)     On or about July 1, 2015, D.K. converted bank account -6009 to a business account in the name of Company B and listed himself as the beneficial owner.   As of on or about July 1, 2015, the opening balance in the account (the "Company B -6009 Account") was $500.

(H)     Between approximately on or about July 8, 2015 and on or about July 24, 2015, D.K. proposed that Hamby open a different company account to send payments to D.K. because D.K. did not want the wire payments coming straight from Hamby's or SAC's bank account.



(I)     On or about July 20, 2015, Hamby opened a bank account ending in -7567 (the "GH Construction -7567 Account") in the name of a shell company he called GH Construction Consultants, LLC to send payments to D.K.

(J)     Based on the conduct described above and the conduct enumerated below lasting at least through in or about December 2015, D.K. and Hamby engaged in an improper and ongoing agreement for Hamby to provide D.K. kickbacks from the awarded subcontract in exchange for work at Fort Benning.   As part of that agreement, Hamby provided the following wire transfer payments from SAC's -5034 account to D.K. through the Company B -6009 Account, totaling at least $62,000:

| Approximate Date of Payment | Approximate Amount of Payment |
|---|---|
| 06/26/2015 | $36,000 |
| 07/08/2015 | $26,000 |
| TOTAL | $62,000 |

(K)     As a further part of that agreement, Hamby provided the following cash payments from SAC to D.K., totaling at least $66,500:



16

| Approximate Date of Payment | Approximate Amount of Payment |
|---|---|
| 06/08/2015 | $19,000 |
| 06/10/2015 | $10,000 |
| 06/17/2015 | $37,500 |
| TOTAL | $66,500 |

(L)     As a further part of that agreement, Hamby, through the GH Construction -7567 Account provided the following wire transfer payments to D.K. through the Company B -6009 Account, totaling at least $254,700:

| Approximate Date of Payment | Approximate Amount of Payment |
|---|---|
| 07/24/2015 | $29,500 |
| 07/29/2015 | $28,000 |
| 08/05/2015 | $12,000 |
| 08/14/2015 | $12,000 |
| 08/19/2015 | $31,000 |
| 08/26/2015 | $16,000 |
| 09/02/2015 | $22,000 |



17

| | |
|---|---|
| 09/14/2015 | $14,000 |
| 09/16/2015 | $6,400 |
| 09/23/2015 | $17,000 |
| 09/30/2015 | $7,500 |
| 10/07/2015 | $7,500 |
| 10/09/2015 | $9,000 |
| 10/14/2015 | $6,300 |
| 10/21/2015 | $6,500 |
| 10/28/2015 | $6,500 |
| 11/25/2015 | $8,500 |
| 12/09/2015 | $3,000 |
| 12/30/2015 | $12,000 |
| TOTAL | $254,700 |

(M)     In addition to the conduct described above, in early 2015, Company A was awarded a sole source contract for the construction of a Sensitive Compartmentalized Information Facility at Fort Gordon.   When D.K. and P.T. learned of an extra $300,000 of



18

funds remaining on the project, D.K. and P.T. had Hamby, through SAC, submit two separate invoices for $18,000 each for work on the project.   Neither SAC nor Hamby ever performed any work on the project.   D.K., P.T., and Hamby split the $36,000.

(N)   Hamby's actions in furtherance of the offense charged in Count One of the Criminal Information, including but not limited to the acts described above, were done willfully, knowingly, with the specific intent to violate the law, and not because of accident, mistake, or other innocent reason.   The Defendant stipulates and agrees that all allegations contained in Count One of the Criminal Information are true and correct and that all elements necessary for conviction on this count have been established beyond a reasonable doubt.

(O)   The foregoing statement of facts is a summary of the principal facts that constitute the legal elements of the offense of Conspiracy to Violate the Anti-Kickback Act.  This summary does not describe all of the evidence that the United States would present at trial or all of the relevant conduct that would be used to determine Hamby's sentence under the Sentencing Guidelines.   Hamby acknowledges that the foregoing statement of facts does not describe all of Hamby's conduct relating to the offense charged in this case, nor does it identify all the persons with whom Hamby may have engaged in illegal activities.



19

(P)     The Defendant stipulates and agrees that all issues regarding relevant conduct and restitution will be ultimately determined by the Court and that nothing herein restricts or otherwise limits the Court's ability to consider these matters.

### (8)

### ACCEPTANCE OF PLEA AGREEMENT

The Defendant understands and has fully discussed with the Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this _1st_ day of ~~March~~ _May_ 2017.


G.F. PETERMAN, III                        ANDREW WEISSMANN
UNITED STATES ATTORNEY          CHIEF, FRAUD SECTION



BY: _____      BY: _____
Crawford Seals                                  Jennifer G. Ballantyne
Assistant United States Attorney        Trial Attorney
Georgia Bar No. 633010                      Criminal Division, Fraud Section

20

I, the undersigned Defendant, have read this agreement and had this agreement read to me by my attorney.   I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

GARY BRUCE HAMBY
DEFENDANT

I, the undersigned attorney for the Defendant, have explained the information and the Government's evidence received through discovery and my investigation of the charge to the Defendant.   I believe the Defendant understands the charge against the Defendant and the evidence that would be presented against the Defendant at a trial.   I have read this agreement, have been given a copy of it for my file, and have explained it to the Defendant.   To the best of my knowledge and belief, the Defendant understands this agreement.

FRANKLIN J. HOGUE
ATTORNEY FOR THE DEFENDANT

21